# IN THE UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
# PEORIA DIVISION

| | |
|---|---|
| JOHN L. LEE, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 04-1213 |
| ) | |
| LABORERS' LOCAL #231 PENSION ) | |
| PLAN BOARD OF TRUSTEES et al. ) | |
| ) | |
| Defendants. ) | |

## ORDER

Before the Court is Plaintiff's Motion to Strike Paragraphs #9 and #10 from the Uncontested Facts section of the Proposed Final Pre-Trial Order and Defendants' Motion for Summary Judgment. For the reasons set forth below, Plaintiff's Motion to Strike [#34] is GRANTED IN PART and DENIED IN PART and Defendants' Motion for Summary Judgment [#26] is GRANTED.

## JURISDICTION

The Court's jurisdiction arises pursuant to 28 U.S.C. § 1331, as the Complaint alleges a denial of benefits under an employee benefits plan governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*.

## BACKGROUND

Plaintiff, John L. Lee ("Lee") is a union laborer and a participant in the Laborers' Local #231 Pension Plan. The Laborers' Local #231 Pension Plan (the "Plan") is a pension plan created and administered pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § § 1001 *et seq.* The Plan is a wholly self-funded ERISA pension plan,

which means that the fund is totally funded by means of employer contributions computed by hours of work performed by employees pursuant to various collective bargaining agreements. The Plan is administered by a Board of Trustees.

Lee filed an application for disability benefits with the Plan on approximately July 7, 2000. He claimed that he was injured on the job and that as a result of the injury, he now suffers from a permanent and total disability because he is blind in one eye. On May 21, 2001, the Fund Administrator denied Lee's application. Specifically, the Fund Administrator found that the medical information provided by Lee was equivocal and non-definitive. Lee then filed an intra-fund appeal of the denial of his application.

In his appeal, Lee contested the competency of two board members by alleging that they were not competent to rule on his appeal because they were crack cocaine users. The Fund Trustees told Lee to remove the offensive language regarding the board members from the application and refused to process the appeal until the allegations were removed. Lee then filed a lawsuit against the Defendants in this Court (*see Lee v. Laborers' Local #231 Pension Plan Board of Trustees,* Case No. 02-1274). Lee and the Plan then agreed that Lee would dismiss the lawsuit and remove the scandalous matter regarding the individual trustees from his appeal in return for the Plan's agreement to pay Lee back disability pension payments from July 2000, if the Trustees determined that Lee was entitled to a disability pension.

Omitting any reference to the suspected drug use by the two Trustees, Lee re-submitted his intra-fund appeal to the Board of Trustees. On May 20, 2003, the Board of Trustees of the Plan conducted an intra-fund appeal hearing. Lee appeared at the hearing and presented arguments to the Board. On May 27, 2003, the Board of Trustees of the Plan denied Lee's appeal. As a result of the denial of his application, Lee filed the instant cause of action. In his

Amended Complaint, Lee alleges that the Board of Trustees breached their fiduciaries duties and that the Plan wrongfully denied him benefits in violation of ERISA.

**A.      Motion to Strike**

Lee has filed a Motion arguing that Paragraphs #9 and #10 of Exhibit Q of Defendants' Motion for Summary Judgment should be stricken.  Specifically, Exhibit Q is a copy of the Proposed Final Pre-Trial Order that was developed by Plaintiff and Defendant in preparation for the initial Final Pre-Trial Conference that was held in this case on February 10, 2006.[1] Paragraphs #9 and #10 of the Proposed Final Pre-Trial Order state:

> (9)    The factual matters stated within the "Decision," including the specific Findings of Fact stated therein, numbered #1 through #15, are stipulated by the parties hereto as being accurate,
>
> (10)    The specific factual matters stated within the "Conclusions of Law" of said "Decision," which "Conclusions are numbered #1 through #10, are also stipulated by the parties hereto as being accurate.

(Proposed Final Pre-Trial Order, at 4.)  These paragraphs refer to the Board of Trustees' Decision (the "Decision") on Lee's intra-fund appeal.  The Decision is included as Exhibit A of Defendants' Motion for Summary Judgment.  The Decision includes sections entitled "Findings of Fact" and "Conclusions of Law."  Defendant claims that the items in these sections are undisputed because Lee agreed to the Proposed Final Pre-Trial Order which contained the above paragraphs.  Lee disagrees and argues that these items should be stricken because he was not given adequate time to examine these undisputed facts before they were submitted to the Court on February 10, 2006, and, if he had examined them, he would not have agreed that these were "undisputed" facts.  Additionally, in Lee's Response to Defendants' Motion for Summary

---

[1]   This Court held a Final Pre-Trial Conference in this case on February 10, 2006.  At that conference, the parties presented the Court with a Proposed Final Pre-Trial Order.  Additionally, Defendants asked the Court for leave to file a Motion for Summary Judgment.  The Court granted Defendants' motion and Defendants filed the instant Motion for Summary Judgment.

3

Judgment, he refers to these items and argues that they are disputed because he did not sign the Proposed Final Pre-Trial Order. Lee repeatedly states that "[t]he Plaintiff was not served with a copy of the document until attached [sic] as Defendants' exhibit ("Q") of Defendants' Summary Judgment Motion." (Pl.'s Response to Motion for Summary, at 3, 5.)

However, a review of Defendants' Exhibit Q indicates that Lee did sign the Proposed Final Pre-Trial Order. Moreover, Lee was provided with a copy at the Final Pre-Trial Conference on February 10, 2006. Despite the presence of Lee's signature on the Proposed Order, the Court recognizes that Lee is proceeding pro se and that he now regrets agreeing to Paragraphs #9 and #10 in the Proposed Order. Accordingly, the Court grants Lee's Motion to Strike in part. Specifically, the Court grants Lee's motion and will consider these facts to be disputed facts for the purposes of summary judgment. However, in accordance with the standard of review on a motion for summary judgment, Defendants' assertions will be accepted as undisputed unless Lee is able to set forth evidence to show that there is a genuine issue of material fact.

**B.    Motion for Summary Judgment**

A motion for summary judgment will be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may meet its burden of showing an absence of material facts by demonstrating "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the

moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Cain v. Lane*, 857 F.2d 1139, 1142 (7th Cir. 1988).

If the moving party meets its burden, the nonmoving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  Federal Rule of Civil Procedure 56(e) requires the nonmoving party to go beyond the pleadings and produce evidence of a genuine issue for trial.  *Celotex Corp.*, 106 S.Ct. at 2553.  This Court must then determine whether there is a need for trial — whether, in other words, there are any genuine factual issues that can properly be resolved only by a finder of fact because they may be reasonably resolved in favor of either party.  *Anderson*, 447 U.S. at 249; *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir. 1995).  Finally, "[w]here a party bears the burden of proof on an issue, he or she must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact requiring trial."  *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1041 (7th Cir. 1993).  In his Complaint, Lee alleges that (1) the Plan wrongfully denied him benefits; and (2) the Board of Trustees breached their fiduciary duties in violation of various provisions of ERISA.

    **1.**    **Denial of Benefits Claim**

Lee's denial of benefits claim is brought pursuant to 29 U.S.C. § 1132(a)(1)(B) of ERISA, which authorizes a participant or beneficiary of an employee welfare benefit plan to bring a civil action "to recover benefits due to him under the terms of his plan . . . ."  29 U.S.C. § 1132(a)(1)(B).  A challenge to a denial of benefits brought under § 1132(a)(1)(B) is to be reviewed *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *Phillips v.*

*Lincoln National Life Ins. Co.*, 978 F.2d 302, 307 (7th Cir. 1992), citing *Firestone Tire & Rubber Co. v. Bruch*, 109 S.Ct. 948, 956 (1989); *Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1389 (7th Cir. 1993). Neither party disputes that the Plan gives the Board of Trustees discretion to interpret the meaning of the terms of the Plan or authority to determine Lee's eligibility for benefits under the Plan. As described later in this Order, it appears that the Board of Trustees utilized the 2001 version of the Plan, rather than the 1993 version, despite the fact that the 1993 version was in effect at the time that Lee was injured. Regardless, both the 1993 and the 2001 versions give the Board of Trustees discretion to interpret the plan. Both versions state:

> The Trustees shall, subject to the requirements of the law, be the sole judges of the standard of proof required in any case and in the application and interpretation of this Plan; and decisions of the Trustees shall be final and binding on all parties.

(1993 Summary Plan Description, at 47; 2001 Summary Plan Description, at 41.) Additionally, both versions of the Plan state:

> The Trustees shall be the sole and final judges of total and permanent disability and of a Participant's entitlement to a Disability Pension hereunder.

(1993 Summary Plan Description, at 33; 2001 Summary Plan Description, at 31.) Both Plans clearly give the Board of Trustees discretionary authority to determine eligibility of disability benefits under the Plan. Where the plan grants discretionary authority to the administrator, the court reviews the decision under the arbitrary and capricious standard. *Hess v. Hartford Life & Accident Ins. Co.,* 274 F.3d 456, 461 (7th Cir.2001). Accordingly, the Board of Trustees' Decision will only be overturned if it was arbitrary and capricious.

Lee argues that the Board's Decision was arbitrary and capricious because (1) the Board utilized the 2001 Plan definition, rather than the 1993 Plan definition, of Total and Permanent Disability when it found that Lee was not totally and permanently disabled; (2) the Board

6

arbitrarily found that Russell Erbaugh was entitled to a disability pension but Lee was not; and (3) the Board failed to provide a fair and adequate procedure for deciding that Lee was not entitled to benefits.

Lee's first argument is that the Board's Decision is arbitrary and capricious because the Board utilized the 2001 definition of totally and permanently disabled when it found that Lee was not entitled to benefits. The 1993 Plan stated:

> Section 3.10. Disability Defined.
>
> A Participant shall be considered permanently and totally disabled only if the Board of Trustees find, on the basis of medical evidence, that:
>
> (a) such disability will be permanent and continuous during the remainder of his life, and
>
> (b) he has been totally disabled by bodily injury or disease so as to be prevented thereby from engaging in his usual occupation.

(1993 Summary Plan Description, at 33.) The 2001 Plan states:

> Section 3.10. Disability Defined.
>
> A Participant shall be considered permanently and totally disabled only if the Board of Trustees find, on the basis of medical evidence, that:
>
> (a) such disability will be permanent and continuous during the remainder of his life, and
>
> (b) he has been totally disabled by bodily injury or disease so as to be prevented thereby from engaging in his usual occupation, or in any occupation, in the "building trades construction industry," which term shall include highway and heavy.

(2001 Summary Plan Description, at 30.)

Lee's claim to the Board was that the Fund Administrator improperly relied on the 2001 definition of totally and permanently disabled when he originally denied Lee's request for a disability pension. Lee's current claim is that the Board of Trustee's Decision reviewing the

7

Fund Administrator's denial was arbitrary and capricious because the Trustees' amendment to the definition of what constitutes a permanent and total disability was arbitrarily expanded, thereby increasing the burden of proof required to demonstrate a "permanent and total disability." In evaluating Lee's claim, the Trustees reviewed the minutes from the Board meeting when the definition of permanent and total disability was changed and found that the change was solely a clarification. In addressing the issue, the Trustees' Decision states:

> The minutes of the Board of Trustees' meeting of the Fund conducted on December 8, 2000, reflect the following:
>
>> Disability Pension Language – Tony [Kelly, of the Segal Company, the Fund's Consultant] gave [the] Trustees a Draft of suggested amendment Language – Section 3.10(b). This is the same in [the] Booklet except "or on any occupation in the building trades construction industry" which term shall include Highway and Heavy. *This is a clarification not an amendment.* A motion was made by R. Schroeder and seconded by M. Taylor to go with the new language. Motion Carried.
>
> That is, the change the Trustees made on December 8, 2000, to the definition language contained within the Summary Plan Description governing the Fund and the benefits thereunder was as follows (the added language appears in italics):
>
>> [a] Participant shall be considered permanently and totally disabled only if the Board of Trustees find[s], on the basis of medical evidence, that:
>>> (c) such disability will be permanent and continuous during the remainder of his life, and
>>> (d) he has been totally disabled by bodily injury or disease so as to be prevented thereby from engaging in his usual occupation, *or in any occupation, in the "building trades construction industry," which term shall include highway and heavy.* (Emphasis added)
>
> The Trustees are of the opinion that the definition of "permanent and total disability" under the Fund provisions have always been interpreted as encompassing the meaning cited above, and that the December 8th, 2000 language addition was intended *solely* as a *"clarification," not* as an amendment to the definition. Such intention and understanding is specifically set forth within the December 8th minutes. The purpose of the clarification is patent. The Trustees did not desire to have applicants who were previously employed as Laborers

8

>obtaining pension benefits for what, for all intents and purposes, were supposed to be payments to compensate for *permanent* and *total* disability, turn around and have those applicants fill job openings in the construction industry, thereby depriving other available, unemployed, able-bodied applicants of a livelihood. The salutary effect of providing disability pension benefits is undermined when those payments are made to those individuals who, while receiving the sane, continue to be actively employed within the same industry which bestowed the benefits upon them premised upon purported *total, permanent, and complete disability.*
>
> * * *
>
>What is particularly troublesome to the Trustees concerning Lee's admission as to actively working as an ironworker for a period of two and one-half (2½) years *while his application for a disability pension was pending and while he appealed the denial of his original application* is the fact that such admission appears to wholly undermine the medical information and physician's opinion relief upon by Lee to support Lee's ultimate application to be determined "permanently" and "totally" disabled. That medical information and physician's opinion purported to indicate, without equivocation, even as late as July 2, 2001, that "Patient <u>is</u> totally and permanently disabled." That same physician's office issued a letter dated April 8, 2003, asserting that Applicant Lee's blindness in his right eye:
>
>> …will be permanent and continuous for the rest of his life and I would think it would prevent him from engaging in occupations such as construction or things of that type due to the constriction of his side vision.
>
>*Clearly,* Applicant Lee has not deemed it appropriate to share with his treating physician the fact that Lee was employed, on a steady, regular basis, as an ironworker in the construction industry from July, 2000 through December, 2002, even while Lee's application for disability pension benefits was pending.

(Board of Trustees' Decision, at 9–12.)

The Trustees' Decision regarding the use of the 2001 definition of permanent and total disability was not arbitrary and capricious. The Trustees' Decision clearly refers to the minutes of the December 8th meeting and states that the purpose of changing the wording of the definition was intended to act solely as a clarification and not as an amendment. The Trustees reviewed the issue and clarified the standard for proving a disability because they did not want individuals who had been awarded a disability pension based on a permanent and totally disability to

continue working in the construction industry thereby depriving other able-bodied workers from obtaining those positions. After reading the Trustees' explanation, it is clear that this clarification was not an arbitrary decision meant to prevent individuals like Lee from receiving disability pension benefits but rather a method of effectuating the policies of the Plan, namely to ensure that individuals who receive disability pension benefits do not continue to work in the construction industry.

Additionally, regardless of whether the Trustees used the 1993 definition or the 2001 definition, the decision to deny Lee benefits was not arbitrary and capricious because the Trustees did not believe that Lee was completely honest with his physician. Lee apparently never told his physician that he was able to work, and in fact, was working as an ironworker throughout the time that he was seeking benefits and appealing the decision of the Fund Administrator. As the Plan makes the Trustees "the sole and final judges of total and permanent disability and of a Participant's entitlement to a Disability pension thereunder," the Trustees' Decision that Lee was not totally and permanently disabled was not arbitrary and capricious because Lee's admissions contradicted and undermined the medical evidence.

Lee's second argument is that the Decision was arbitrary and capricious because the Plan denied his application for benefits even though it had previously awarded Russell Erbaugh a disability pension after he became blind in one eye. In reviewing this claim, the Trustees stated:

> Lee's next assertion, that the circumstances involving the 1986 disability application of Trustee Russell Erbaugh provided a "similarly situated" application, fails to persuade the Board that somehow Applicant Lee has been prejudiced by the present denial of his application. Unfortunately the present Board is not the same Board of Trustees which considered the pension disability application of Russell Erbaugh some nineteen (19) years ago, and the medical information, documentation, etc., supporting the original application of Mr. Erbaugh and the approval of the same are not readily available. Further, to review the such without the express, written approval of Mr. Erbaugh would be a patent breach of the confidentiality obligations owed to Mr. Erbaugh by the Trustees

10

pursuant to the Health Insurance Portability and Accountability Act of 1996 (HIPAA) (67 Fed. Reg. 14776 *et seq.*), since no rationale has been raised questioning the propriety of the approval of his 1986 application for disability pension benefits in the past nineteen (19) years.

Applicant Lee's assertion that his circumstances concerning blindness in one eye is the same as that as Mr. Erbaugh's was in 1986 is not supported by any evidence. Further, it does not appear that Mr. Lee attempted to contact Mr. Erbaugh to determine whether Mr. Erbaugh was willing to provide permission to have his medical records (if still available from 1986) examined to determine whether the bases for approving the latter's disability pension application was similar or the same as that presently being asserted by Mr. John Lee.

The Trustees comprising the present Board, however, *are* certain that there exists several *significant* differences between the Erbaugh circumstance and that of Mr. Lee, differences which can be discerned without the need to examine aged and confidential medical information.

Absolutely no information indicates that Russell Erbaugh ever attempted to, or in actuality, worked as an ironworker (or, for that matter, in any capacity in the construction trades) either during the pendency of his application for disability pension benefits or thereafter. Mr. Lee, in contrast, not only actively held himself out as available *and able* to perform ironworker's duties in the construction trades during the pendency of his disability pension application, *Mr. Lee actually performed such construction work for the vast period of time such application has been pending* (*i.e.,* Lee has *actually* worked, *by his own admission,* as an ironworker for thirty (30) of the thirty-five (35) months that his disability pension application has either been pending before the Fund Administrator, before the Board of Trustees, or before the Federal District Court). Although Mr. Lee purports not to find this fact to be distinguishing (from the purported circumstance involving Mr. Erbaugh), certainly the present members of the Board of Trustees of Laborers' Local #231 Pension Fund find such fact not only distinguishing but relevant to the determination of whether Lee's application for pension benefits should be granted.

Lee also fails to mention that Russell Erbaugh worked as a Union Business Agent immediately prior to that 1986 Board of Trustees determining that Erbaugh's medical condition constituted a "permanent" and "total" disability, and that the job duties of a Union Business Agent entailed considerable driving. Certainly the strain of multiple hours of driving could result in exacerbation of existing health conditions where eyesight is a factor. Whether such factor was considered by the previous Board of Trustees is only speculation. But certainly, the nature of the day-to-day work performed by Erbaugh as compared to Lee is wholly different and dispels Lee's notion that he and Erbaugh are somehow, *per se,* similarly situated applicants. The Trustees find just the opposite.

11

(Board of Trustees' Decision, at 12–14.)

Lee argues that the decision to award Erbaugh benefits but to deny him benefits was arbitrary and capricious. However, Lee did not offer any evidence at the intra-fund appeal hearing to support his contention. Despite the fact that Defendants filed the Motion for Summary Judgment, Lee has the burden of proving that the Trustees' Decision denying him benefits after they had previously granted benefits to Erbaugh was arbitrary or capricious and he has not been able to do so. Lee now argues that the Trustees' Decision was capricious because it shifted the burden to Lee to prove that he and Erbaugh were similarly situated. However, the Trustees stated that HIPPA prevented them from reviewing Erbaugh's confidential medical information or releasing the information to Lee. Contrary to Lee's assertion, the Trustees' reason for not providing the information to Lee and suggesting to Lee that he could have contacted Erbaugh himself was not capricious but was actually the Trustees' attempt to comply with the law. Furthermore, the lack of evidence regarding Erbaugh's medical condition, his job responsibilities, or even the wording of the Plan in effect at the time that Erbaugh was awarded benefits prevent this Court from finding that the Trustees acted arbitrarily or capriciously when they denied Lee benefits after granting Erbaugh benefits for an allegedly similar disability.

Lee's third argument is that the Board's Decision was arbitrary and capricious because the Board failed to provide a fair and adequate procedure for deciding claims for pension benefits. Lee's primary basis for making this argument is the format of a questionnaire that the Plan requires applicants to have completed by their physician. Question three on the Physician's Medical Examination Report is indeed confusing. The relevant section of the questionnaire as completed by Lee's physician appeared as follows:

DEGREE OF DISABILITY

Based on my examination and diagnosis, I find the patient:

1. Totally disabled by bodily injury or disease so as to be prevented from engaging in his usual occupation.

    __X__ Yes          _____ No

       Comment_____
       _____
       _____

2. Such disability is likely to be permanent and continuous for remaining life.

    __X__ Yes          _____ No

       Comment_____
       _____
       _____

3. Patient is not totally and permanently disabled

    __X__ Yes          _____ No

       Comment_____
       _____
       _____

In reviewing Lee's claim regarding the use of the questionnaire, the Trustee's stated:

> The first notion which Appellant Lee brought to the attention of the Trustees was, what Lee deemed, the "ridiculous" and "unprofessional" question contained within the application form utilized by the Fund in the process for an applicant seeking a disability pension benefit.
> * * *
>
> Applicant Lee took great pains at the appellate proceeding to excoriate the Fund Trustees for utilizing this "question" on the application form, an excoriation which neared a point where Applicant Lee's stridency could be deemed rude. The Trustees would concede that the "question" itself could be better stated since it is difficult to navigate around the vague entendre created by responding to the "question" by a mere "yes" or "no"), but that hardly calls for the type of criticism leveled by Applicant Lee. Several comments concerning the application are worthy of note.

> First, certainly neither the Administrator of the Fund nor the Trustees would *ever* decide such an important issue as to the entitlement of an applicant for disability pension benefits simply because the applicant (or, for that matter, the applicant's treating physician) responded to a single question on the application form "yes" or "no." Such would be violative of the Trustees' fiduciary duties and simply did not occur in the instance of Applicant Lee having been denied pension benefits in the instant matter.
>
> Second, the "question" to which Applicant Lee takes exception provides for any comment the applicant's attending physician desires to provide, thereby dispelling any notion that somehow either Applicant Lee or any other applicant is precluded from having his or her attending physician further explicate the medical condition(s) which the treating physician may believe constitutes permanent and total disability.
>
> Third, and a point that Applicant Lee glaringly omits, the "questions" immediately preceding the "question" which Lee finds objectionable on the form utilized by the Fund for determining the propriety of providing applicants disability pension benefits (a form to be completed by applicants' treating physicians) provide as follows.
>
> [Referring to Question #1 and Question #2 from above]
>
> That is, the form *viewed as an entire document* and not simply as individual questions gives more than ample opportunity for a treating physician to expound and provide information as the type, nature, likely duration, and physical limitation caused by an applicant's disability.
>
> Thus, the Trustees reject Applicant Lee's notion that because of the vagueness of the single question on the form (especially when taken out of context and when the specific request for "comment" is ignored by Applicant Lee), that somehow the Administrator's prior denial of Lee's disability pension benefit application was in error.
>
> On the contrary, and as further explicated below, the Trustees find that the Administrator did not err in finding that Applicant Lee's present application for disability pension benefits should be denied. The Trustees, both employer and union trustees, voted unanimously to deny Applicant Lee relief on appeal.

(Board of Trustees' Decision, at 7–9.) The Trustees' Decision regarding the use of the questionnaire was not arbitrary and capricious. The Trustees recognized that the "question" was confusing but explained that the doctor's answer to this one question was not the basis for

14

denying Lee benefits under the Plan. The Trustees explained that even though the "question" itself was confusing, the format of the questionnaire provided Lee's physician with ample opportunity to further explain Lee's condition. Additionally, the Trustees noted that did not rely solely on this questionnaire to form the basis of their decision to deny Lee benefits. As stated previously in this Order, the Trustees' decision appears to have been based, not on the answers to this question as Lee suggests, but on the fact that Lee continued to work in the construction industry after he allegedly became totally and permanently disabled. Accordingly, the Trustees' use of question #3 on the physician's questionnaire, when combined with the other evidence presented to them, was not an arbitrary or capricious decision to deny Lee benefits.

Lee's final argument is that the Decision is arbitrary and capricious because the Board refused to investigate the competency of two of the Trustees prior to making the decision to uphold the Fund Administrator's Decision denying Lee benefits. Lee has consistently alleged that two of the Trustees were not competent to make decisions regarding pension benefits because they are crack cocaine users. Prior to filing the intra-fund appeal at issue in this case, Lee agreed to remove any allegations against the two trustees from his appeal. Accordingly, the Trustees' actions in deciding the issue before them was not arbitrary and capricious because Lee did not present any evidence to them regarding the competency of the Trustees.[2] Although Lee may be able to bring a claim of breach of fiduciary duty with respect to these allegations, as we will see in the next section of this order, Lee's choice of remedies forecloses that possibility as well.

---

[2] Lee's failure to introduce evidence of this claim at his intra-fund appeal hearing is not surprising in light of the fact that Lee agreed not to do so as one of the stipulations that he agreed to when he dismissed his previous lawsuit.

### 2. Breach of Fiduciary Duty

Lee claims that the Board of Trustees breached their fiduciary duties when they (1) enforced the 2001 definition of "total and permanent disability;" (2) refused to address the competency of two of the Trustees; (3) placed the burden of proof on Lee to produce Russell Erbaugh's medical evidence; and (4) did not process Lee's appeal in a timely manner. ERISA imposes standards of fiduciary duty, including the fiduciary's duty to act "with the care, skill, prudence, and diligence" as would a prudent man under the same circumstances. 29 U.S.C. § 1104(a)(1)(B). If a fiduciary breaches his duty, he can be personally liable to the plan for any losses to the plan resulting from his breach, as well as can be "subject to such other equitable or remedial relief as the court may deem appropriate . . ." 29 U.S.C. § 1109(a).

Defendants argue that they are entitled to summary judgment as a matter of law on Lee's claims that Defendants breached their fiduciary duties because a claim of breach of fiduciary duties is not available to a plan participant who, as here, is entitled to challenge a denial of benefits. Defendants rely on the Sixth Circuit case of *Wilkins v. Baptist Healthcare System, Inc.,* 150 F.3d 609, 615 (6th Cir. 1998), where the Sixth Circuit interpreted *Varity Corp. v. Howe,* 516 U.S. 489 (1996), to hold that a plan beneficiary cannot avail themselves of both a breach of fiduciary duty and a claim of denial of benefits. Although the Seventh Circuit has yet to address this exact issue, the issue has been addressed by numerous district courts in this circuit and those courts have found that a plaintiff cannot maintain claims under § 502(a)(3) for a breach of fiduciary duty when relief is available under § 502(a)(1)(B). *Moffat v. Unicare Midwest Plan Group 314541,* No. 04 C 5685, 2005 WL 1766372, *5 (N.D.Ill. July 25, 2005); *Schluter v. Principal Life Ins. Co.,* No. 00 C 2526, 2001 WL 476589, *4 (N.D.Ill. May 2, 2001); *White v. Sundstrand Corp.*, No. 98 C 50070, 2000 WL 713739, *12 (N.D.Ill. May 23, 2000).

In this case, Lee alleges that the Trustees violated 29 U.S.C. § 1104 when they breached their fiduciary duties. Title 29 U.S.C. § 1132 authorizes individuals such as Lee to bring a civil action against a trustee when a plan trustee violates Section 1104. 29 U.S.C. § 1132. The relevant portions Title 29 U.S.C. § 1132 state:

> (a) Persons empowered to bring a civil action
>
> A civil action may be brought--
>
> (1) by a participant or beneficiary—
>
> > (A) for the relief provided for in subsection (c) of this section, or
> >
> > (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
>
> (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;
>
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

29 U.S.C. § 1132.

In *Varity*, the Supreme Court carefully reviewed the overall structure of § 1132 and found that:

> Four of that section's six subsections focused on specific area, i.e., the first (wrongful denial of benefits and information), the second (fiduciary obligations related to the plan's financial integrity), the fourth (tax registration), and the sixth (civil penalties). The language of the other two subsections, the third and the fifth, creates two "catchalls," providing "appropriate equitable relief" for "any" statutory violation. This structure suggests that these "catchall provisions act as a safety net, offering appropriate equitable relief for injuries caused by violations that [§1132] does not elsewhere adequately remedy.

*Varity*, 516 U.S. at 512. Here, Lee has brought a denial of benefits claim under the first subsection and a breach of fiduciary duty claim under the third subsection. While in some cases,

17

this may be proper, for example, where a plaintiff is seeking equitable relief resulting from a breach of fiduciary duty in addition to legal remedies resulting from a denial of benefits, that it not the case here.  In this case, Lee only asks this Court to award him compensatory damages, punitive damages, interest, consequential damages, and reimbursement of legal fees.  Lee does not seek any equitable remedies and therefore Lee's breach of fiduciary duty claims are not distinct from his denial of benefits claims. Accordingly, Lee's only avenue for achieving the relief that he seeks is through his denial of benefits claim.  As stated previously, Defendants are entitled to summary judgment on Lee's denial of benefits claim because Lee has failed to establish that the Trustees' Decision was an arbitrary or capricious abuse of their discretion.  Therefore, Defendants' Motion for Summary is granted.

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Strike [#34] is GRANTED IN PART and DENIED IN PART and Defendants' Motion for Summary Judgment [#26] is GRANTED.

ENTERED this 7th day of June, 2006.

                                                  s/Michael M. Mihm
                                                  Michael M. Mihm
                                                  United States District Judge